**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X   Case No.
TASHARY PEREZ,

                      Plaintiff,                    **COMPLAINT**

    -against-                                **PLAINTIFF DEMANDS**
                                                        **A TRIAL BY JURY**
222 BEEKMAN RESTAURANT INC. d/b/a HUDSON
ANCHOR SEAFOOD & GRILL, GARY SERINA,
*Individually*, and ANTHONY DOE, *Individually*, (the
surname DOE being fictitious, as the true surname is
presently unknown),

                      Defendants.
---------------------------------------------------------------------X

       Plaintiff, TASHARY PEREZ, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of Defendants 222 BEEKMAN RESTAURANT INC. d/b/a HUDSON ANCHOR SEAFOOD & GRILL, GARY SERINA, *Individually*, and ANTHONY DOE, *Individually*, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for **failure to pay overtime wages** for hours worked in excess of forty (40) hours per workweek, and seeks to recover unpaid back wages, an additional amount as liquidated damages, and reasonable attorneys' fees and costs.

2. Plaintiff also complains pursuant to the Wage Theft Prevention Act, New York Labor Law § 195, *et seq*. and seeks to redress the damages she has suffered as a result of Defendants' failure to give her written notice of wage rates, including, *inter alia*, her rate of pay.

3. Plaintiff also complains pursuant to the New York State Human Rights Law, New York

1

State Executive Law § 296 *et seq.,* ("NYSHRL"). Plaintiff seeks damages to redress the injuries she has suffered as a result of being discriminated against on the basis of her sex/gender in that **she was repeatedly sexually harassed by Defendant ANTHONY DOE, culminating in him assaulting and battering Plaintiff when he agressively smacked her buttocks with a wooden spoon. Worse yet, Plaintiff was constructively discharged when Defendant GARY SERINA refused to terminate Defendant ANTHONY DOE for his unlawful conduct.**

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under § 216(b) of the FLSA (29 U.S.C. §216 (b)), and 28 U.S.C. §§ 1331 and 1343.

5. The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

7. At all times relevant, Plaintiff TASHARY PEREZ ("Plaintiff") was and is a resident of the State of New York.

8. At all times relevant, Defendant 222 BEEKMAN RESTAURANT INC. d/b/a HUDSON ANCHOR SEAFOOD & GRILL ("HUDSON ANCHOR") was a domestic business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York.

9. At all times relevant, Defendant HUDSON ANCHOR operates a restaurant in Westchester County located at 222 Beekman Ave, Sleepy Hollow, NY 10591 (the "Restaurant").

10. At all times relevant, Plaintiff was an employee of Defendant HUDSON ANCHOR, and

worked at the Restaurant.

11. At all times relevant hereto, Defendant GARY SERINA ("SERINA") was and is a resident of the State of New York.

12. At all times relevant hereto, Defendant SERINA was an employee of Defendant HUDSON ANCHOR holding the position of "Owner/Manager."

13. At all times relevant hereto, Defendant SERINA held and/or exercised supervisory authority over Plaintiff and had the power to hire, fire and/or directly affect the terms and conditions of Plaintiff's employment.

14. Upon information and belief, Defendant ANTHONY DOE's first name is "Anthony." Defendant ANTHONY DOE's last name is presently unknown to Plaintiff and she therefore refers to Defendant ANTHONY DOE by such fictitious name.

15. At all times relevant hereto, upon information and belief, Defendant ANTHONY DOE ("ANTHONY") was and is a resident of the State of New York.

16. At all times relevant, Defendant ANTHONY was an employee of Defendant HUDSON ANCHOR holding the position of "Chef."

17. Defendant HUDSON ANCHOR, Defendant SERINA, and Defendant ANTHONY are jointly referred to herein as "Defendants."

18. At all times relevant, Defendant HUDSON ANCHOR employed at least four (4) employees.

19. The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee and an employee is anyone who is suffered or permitted to work. As a result, including as further described below, both Defendants are liable as "employers" under the FLSA.

20. Upon information and belief, Defendant HUDSON ANCHOR grossed more than $500,000 in the past fiscal year, and further, during Plaintiff's employment by Defendant HUDSON ANCHOR, she routinely engaged in activities which facilitated or related to interstate or foreign commerce while on the job.

21. Upon information and belief, Defendants are also "employers" pursuant to the New York Labor Law and the New York State Human Rights Law.

## MATERIAL FACTS

22. On or about July 18, 2018, Defendants hired Plaintiff as an "Assistant Chef." Plaintiff earned $12 per hour with no tips and worked approximately 66 hours per week. Plaintiff was earning approximately $700 per week or, approximately $36,400 per year.

23. At no time did Plaintiff ever manage or supervise any other employees while employed by Defendants.

24. In her capacity as an Chef Assistant, Plaintiff dealt in the preparation of food and ingredients, some of which came from across state lines.

**Wage Theft Prevention Act**

25. At no point throughout Plaintiff's employment by Defendant HUDSON ANCHOR did it give Plaintiff written notice of: wage rates including Plaintiff's rate or rates of pay, overtime rate of pay, how the employee is paid (by the hour, shift, day, week, commission, etc.), the day of her regular payday, or the official name of the employer and any other names used for business.

26. Defendant HUDSON ANCHOR failed to give Plaintiff proper notice pursuant to the Wage Theft Prevention Act throughout the entirety of her employment with it.

27. Therefore, Plaintiff is entitled to the statutory penalty of $50 per day for each day that the

violation occurred—49 days, (from approximately July 29, 2018 through September 16, 2018-her last day of employment).

**28.   As such, Defendants are liable for a total of $2,450 for violating the Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-b).**

**Unpaid Wages**

29.   From December 31, 2017 through December 30, 2018, the Minimum Wage applicable to employers in Westchester County has been $11.00 per hour.

30.   From Plaintiff's hiring on or about July 18, 2018, through her constructive discharge on or about September 16, 2018 (an approximate 8-week period), Plaintiff typically worked at the Restaurant six (6) days per week for approximately eleven (11) hours per day each and every day. She regularly worked from 10am until approximately 10pm and usually worked every day of the week except for Tuesdays.

31.   During the entirety of Plaintiff's employment, Plaintiff regularly worked twenty-six (26) hours of overtime each and every week.

32.   Defendant HUDSON ANCHOR was mandated to pay Plaintiff at a rate of one-and-one-half times her hourly wage for all hours worked beyond forty (40) each and every week.

33.   Defendant HUDSON ANCHOR paid Plaintiff only her regular hourly wage for hours worked over forty (40) hours per week.

34.   Thus, Defendant HUDSON ANCHOR owes Plaintiff an additional "half" of her hourly wage rate for each and every hour worked beyond forty (40) each and every week during her employment by Defendants.

35.   Accordingly, Defendant HUDSON ANCHOR failed to pay Plaintiff $1,248.00 for all overtime hours worked (8 wks. x $6.00/hr. [$12.00 ÷ 2] x 26 OT hrs./wk. = $1,248.00).

36. Additionally, throughout Plaintiff's employment by Defendants, Plaintiff was routinely caused to work in excess of ten (10) consecutive hours, six (6) days per week. Under the New York Labor Law she is entitled to one hour's pay at the basic minimum wage rate in addition to the minimum wage required in this part for any day in which the spread of hours exceeds ten (10) hours.

37. Accordingly, Defendant HUDSON ANCHOR failed to pay Plaintiff $528.00 (8 wks. x $11.00/hr. x 6 days/wk. = $528.00).

38. **Accordingly, based on the aforementioned, Defendant HUDSON ANCHOR owes Plaintiff a total of $4,226.00 ($1,248.00 + $528.00 + $2,450).**

**Sex Discrimination**

39. Defendant ANTHONY was hired as Defendant HUDSON ANCHOR's "Chef" soon after Plaintiff was first hired. Almost immediately after being hired Defendant ANTHONY began a vulgar campaign of sex-based discrimination against Plaintiff. He began to use offensive words of a sexual nature targeted at Plaintiff.

40. Starting around the beginning of August 2018, Defendant ANTHONY began calling Plaintiff, "bitch," "ghetto bitch," and "my bitch," during nearly every shift Plaintiff worked with him.

41. Plaintiff was shocked at Defendant ANTHONY's use of extremely offensive language. Initially, she said nothing whenever he called her, "bitch," or similarly offensive names.

42. Then, Defendant ANTHONY began making overt sexual advances towards Plaintiff that made her extremely uncomfortable.

43. Once, in or around the beginning of August 2018, Defendant ANTHONY said to Plaintiff when she began her shift, "You look very pretty today." Plaintiff did not like the comment

6

about her physical appearance but tried to ignore it. Unfortunately, this was just the beginning.

44. At another shift soon after, Defendant ANTHONY commented on Plaintiff's lipstick and stated, "Your lipstick would look better on my lips." Plaintiff was disgusted that Defendant ANTHONY would make a comment which clearly suggested they engage in a sexual act together. Plaintiff responded, "Ew, no thank you."

45. Then, in or around August 2018, Defendant ANTHONY was working very close to Plaintiff and purposely grazed her breast with his elbow. He giggled and said, "I'll never wash my arm again." Plaintiff was mortified that he would touch her in a sexual manner.

46. Defendant ANTHONY also made sexually suggestive jokes to Plaintiff, notwithstanding her complete lack of amusement. He once began a joke by asking Plaintiff something about her "pubic hair." Plaintiff simply shook her head and walked away from him.

47. On several occasions Defendant ANTHONY would tease Plaintiff in a flirtatious manner. For example, he once chided Plaintiff for measuring a sauce incorrectly and then quickly told her, "You know I love you." Plaintiff ignored Defendant ANTHONY when he made this comment.

48. On another instance when Defendant SERINA was having an argument with Molinda Kearns, co-owner of the Restaurant, Defendant ANTHONY said to Plaintiff, "Don't worry. *I'll take you away from here*." Plaintiff just replied, "No thanks," and walked away from him.

49. On another occasion, Defendant ANTHONY held up 2 pieces of asparagus to Plaintiff, one flimsier than the other, and told her, "Look! This was me when I was younger. And this will be me when I'm old," making a crass phallic joke that made Plaintiff very

7

uncomfortable. Plaintiff hated that Defendant ANTHONY felt like he could make such crude jokes to her and wished it would stop. She shook her head and said nothing. Then Defendant ANTHONY held 1 of the pieces of asparagus up against his pants and started thrusting his groin in a disgusting sexual motion. Plaintiff was mortified and walked away.

50. Once, in August 2018, Defendant ANTHONY told Plaintiff an extremely crude story about performing oral sex on a woman after he had eaten a very spicy sauce. Plaintiff shook her head and said, "TMI Chef!" (meaning "too much information"). Defendant ANTHONY just laughed when she protested, as was typical.

51. Another time, while Plaintiff was chopping vegetables, Defendant ANTHONY walked by her station and pressed his body up against Plaintiff's buttocks, severely startling her. She was disgusted. Defendant ANTHONY said, "Oops, I had to reach something above you," making up an obvious pretext for touching Plaintiff in a sexual manner. Plaintiff hated more than anything when Defendant ANTHONY touched her.

52. During one of Plaintiff's shifts, Plaintiff was doing some breathing exercises with her eyes closed. Defendant ANTHONY had the audacity to come up from behind Plaintiff and start massaging her shoulders. She was startled and jumped, and then Defendant ANTHONY tapped both of Plaintiff's cheeks with his hands and said, "Wake up!" Plaintiff told him, "Hey, that wasn't cool."

53. Defendant ANTHONY continued to regularly refer to Plaintiff as "Bitch," or, "My Bitch." Finally, Plaintiff complained of sexual harassment to Defendant SERINA, telling him, "Chef Anthony is not treating me well. He calls me 'bitch' and 'ghetto bitch' and really crosses the line." Defendant SERINA told her not to worry, that he will take care it, and to go back to work.

54. Plaintiff was hopeful that things would change but Defendant ANTHONY continued calling her "bitch" and continued making inappropriate sexual advances on Plaintiff over the next several shifts she worked. It was as if no one had said anything to Defendant ANTHONY about his behavior.

55. In or around early September 2018, Defendant ANTHONY saw Plaintiff's friend visit her. Plaintiff's friend gave her a flower and kissed her cheek. **Then, outrageously, Defendant ANTHONY mimicked Plaintiff's friend's behavior and actually leaned over to Plaintiff to kiss her cheek. Plaintiff was disgusted and tried to move her body out of the way but she was not quick enough and Defendant ANTHONY did in fact kiss her cheek.** Plaintiff felt sick. Her response to Defendant ANTHONY was, "Gross."

56. Plaintiff then approached Defendant SERINA again as it was clear that no action was taken to prevent further sexual harassment. She asked him if he spoke with Defendant ANTHONY. He replied that he had and asked whether the behavior stopped. Plaintiff responded that Defendant ANTHONY was still making comments and sexual jokes, and even touching her, to which Defendant SERINA replied, "I don't know what to tell you—record him," and then walked away, barely looking up from his phone at Plaintiff while she complained.

57. Plaintiff was devastated that her complaints were obviously falling on deaf ears. Just showing up for work each shift made her extremely anxious as she was always wondering what to expect next with regards to Defendant ANTHONY's extremely inappropriate sexual advances.

58. Then, in or around mid-September 2018, Defendant ANTHONY crossed a serious line. **He had the audacity to grab a wooden spoon, walk behind Plaintiff at her work station**

**while she was washing dishes, and then smack her buttocks with the spoon.** Plaintiff was in shock and yelled at Defendant ANTHONY, "WTF Chef?!" Defendant ANTHONY laughed in response. Plaintiff could not take the harassment any longer.

59. The same day Defendant ANTHONY assaulted Plaintiff with the spoon, Plaintiff went to speak to "Chris," her manager, since Defendant SERINA has done nothing to help her thus far. Plaintiff told Chris about having just been smacked with a spoon by Defendant ANTHONY. She also added that Defendant ANTHONY kissed her cheek and has been calling her "Bitch" for many weeks. She told him about the name-calling and the inappropriate sexual advances and jokes. Chris's response was extremely disappointing. He said that he had already spoken to Defendant SERINA about these issues and that they are, "stuck between a rock and a hard place." He said, "We can't fire Chef," although that would clearly have been the appropriate remedial action. Chris also said that they would, "hate to lose [Plaintiff]," however, due to Defendants' refusal to take appropriate remedial action, that is exactly what occurred.

60. Defendants' response to Plaintiff's complaints of sexual harassment was so inadequate, that Chris suggested that she "stick it out," and, "work as a server in the front," ostensibly farther from where Defendant ANTHONY was typically located. Plaintiff responded that she simply could not work with Defendant ANTHONY anymore and that even if she served tables at the front of the Restaurant, she would still have to regularly interact with him. His response was, "I totally understand and wish you the best of luck."

61. Then, Defendant SERINA approached and asked Chris, Plaintiff, and Defendant ANTHONY to join him for a meeting. Plaintiff informed Defendant SERINA about the incident with Defendant ANTHONY and the spoon. Defendant SERINA told Defendant

ANTHONY that he's a good guy but that he has to stop calling Plaintiff "Bitch" and that he shouldn't touch Plaintiff or speak to her in any way different from how he would speak to Defendant SERINA or Ms. Kearns. He said, "we have a good team here and I don't want you to fuck it up." Defendant ANTHONY did not even try to deny kissing Plaintiff or smacking her buttocks. He then looked at Plaintiff and said, "You're a great worker, mother of 3, great team player, motivated—there's not really much I can do or say. I can't fire you. You got me by the balls. I hope we can move on from this as adults and have a good season because we're going to make a lot of money."

62. Plaintiff was in complete disbelief that Defendant ANTHONY wasn't being terminated and that Defendant SERINA clearly cared more about his profit than his Chef sexually harassing and assaulting Plaintiff.

63. When Defendant SERINA finished speaking, Plaintiff collected her belongings and left. She was not able to return to a work environment where sexual harassment and even assault were clearly tolerated.

64. The environment in which Plaintiff was forced to work had become so hostile that no reasonable person in Plaintiff's shoes could be expected to endure it. Plaintiff suffered an assault and battery at the hands of Defendant ANTHONY and Defendant SERINA permitted him to continue working at the Restaurant.

65. The following day, Defendant SERINA asked Plaintiff if she would be working the following shift. Plaintiff replied that she was not comfortable working there any more and wished him the best. Outrageously, Defendant SERINA responded to Plaintiff that leaving the Restaurant would be the biggest mistake Plaintiff ever makes and that she won't be making the money she was making there. Plaintiff told him that she's made her complaints

known a number of times and that she just, "Can't work with Chef."

66. Plaintiff was in effect, constructively discharged, as she could not return to a work environment where she lived in fear of being sexually harassed and assaulted.

67. The above are just some of the acts of sexual harassment and discrimination that Plaintiff experienced on a regular and continual basis while employed by Defendants.

68. Plaintiff feels offended, disturbed, humiliated, degraded, victimized, embarrassed, and emotionally distressed by the unlawful discrimination. Indeed, Defendant ANTHONY's comments and conduct made Plaintiff dread even coming to work.

69. Plaintiff was never given an employee handbook or manual which directed her on taking steps to address sexual harassment. Nor was Plaintiff ever told by Defendants' management team how to proceed with complaints of sexual harassment.

70. Defendants created an unlawfully hostile and intimidating work environment, which unreasonably interfered with Plaintiff's employment.

71. No reasonable person in Plaintiff's shoes could be expected to endure the hostile work environment which Plaintiff suffered working for Defendants.

72. Plaintiff has suffered severe emotional distress, physical injuries, and damages as a result of Defendants' sexual harassment and conduct.

73. The comments and conduct by Defendant ANTHONY were unsolicited, unwelcome and offensive.

74. Plaintiff was regularly exposed to a sexually offensive work environment by Defendant.

75. Plaintiff's complaints of sexual harassment to Defendant SERINA were not addressed at all and she suffered severe sexual harassment throughout her employment, notwithstanding her complaints.

76. Defendant SERINA permitted the sexual harassment Plaintiff suffered at the hands of Defendant ANTHONY to continue.

77. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

78. As a result of the acts and conduct complained of, Plaintiff has suffered emotional pain, physical pain and injury, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

79. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## OVERTIME

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. Defendants have willfully employed Plaintiff for workweeks longer than forty (40) hours and have failed to compensate Plaintiff for her employment in excess of forty (40) hours per week at a rate of at least one-and-one-half times the rate at which she was employed.

82. Defendants failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C. § 201, *et seq.*, and its implementing regulations.

83. Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA is a direct violation of the FLSA, specifically 29 U.S.C. § 207.

84. Defendants' failure to pay proper overtime wages for each hour worked over forty (40) per week was willful within the meaning of 29 U.S.C. § 255.

85. Defendants' failure to comply with the FLSA has caused Plaintiff to suffer loss of wages.

**AS A SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW**
**OVERTIME**

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. Defendants employed Plaintiff within the meaning of NYLL §§ 2, 190, and 651.

88. Defendants failed to pay Plaintiff a premium for hours worked in excess of forty (40) hours per week, in violation of NYLL § 170.

89. Defendants have violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

90. Defendants' failure to comply with the NYLL overtime requirements has caused Plaintiff to suffer loss of wages and interest thereon.

91. Defendants' failure to pay proper overtime wages is willful.

92. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages in an amount to be determined at trial, plus an amount equal to 100% of Plaintiff's unpaid overtime wages in the form of liquidated damages, as well as attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

**AS A THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW**
**SPREAD-OF-HOURS PAY**

93. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

94. Defendants employed Plaintiff within the meaning of NYLL §§ 2, 190, and 651.

95. Defendants failed to pay Plaintiff spread-of-hours wages, in violation of NYLL § 21(11) and N.Y. Comp. Codes R. and Regs. Tit. 12, § 142-2.4, which states that, "[a]n employee shall receive one hour's pay at the basic minimum wage rate in addition to the minimum wage required in this part for any day in which … the spread of hours exceeds 10 hours."

96. Defendants' failure to pay Plaintiff spread-of-hours wages was willful.

97. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants damages in the amount of unpaid spread-of-hours wages and an amount equal to 100% of Plaintiff's unpaid spread-of-hour wages in the form of liquidated damages, as well as attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

## AS A FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE WAGE THEFT PREVENTION ACT

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. Defendants failed to give Plaintiff written notice regarding: her regular rate of pay, how she was to be paid logistically, her "regular payday," the official name of the employer and any other names used for business, the address and telephone number of the employer's main office or principal location, in violation of NYLL § 195.

100. Plaintiff has been damaged as a result of Defendants failure to provide her with such written notice.

101. As Defendants' failure to provide the aforementioned notices occurred for the entirety of Plaintiff's employment, she is entitled to the maximum amount available under the law.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103. The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer . . . because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

104. Defendants engaged in an unlawful discriminatory practice in violation of the New York State Executive Law § 296(1)(a) by discriminating against Plaintiff based on her sex (sexual harassment), subjecting her to a hostile work environment and causing her to suffer a constructive discharge.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL

105. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

107. Defendant SERINA and Defendant ANTHONY engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting,

inciting, compelling and coercing the discriminatory conduct.

## AS A SEVENTH CAUSE OF ACTION
## FOR ASSAULT AND BATTERY
## (Only Against Defendant ANTHONY)

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

109. By his actions as set forth above, Defendant ANTHONY subjected Plaintiff to assault and battery. Defendant ANTHONY intentionally subjected Plaintiff to harmful and/or offensive physical contact. Defendant ANTHONY further intentionally placed Plaintiff in imminent reasonable apprehension of a harmful and/or offensive physical contact.

110. As a result of this harmful and/or offensive contact and/or reasonable apprehension of the same, Plaintiff sustained severe injuries and emotional harm.

## JURY DEMAND

111. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Fair Labor Standards Act and the New York State Labor Law by failing to pay Plaintiff overtime wages and spread of hours pay, and for failing to provide a proper wage notice as required by the Wage Theft Prevention Act;

B. Declaring that Defendants engaged in unlawful employment practices prohibited by the New York State Executive Law § 296, *et seq*. in that Defendants sexually harassed Plaintiff, and discriminated against Plaintiff on the basis of her sex/gender, subjecting her to a hostile work environment, and causing her to suffer a constructive discharge;

C. Declaring that Defendant ANTHONY assaulted and battered Plaintiff;

D. Awarding Plaintiff compensatory damages for mental and emotional injury, physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices, and assault and battery committed.

Dated: New York, New York
December 5, 2018

                                                PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: *[signature]*

Steven Fingerhut
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com